UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20CV-63-RGJ

**ANDREW BOER**                                                      **PLAINTIFF**

v.

**U.S. COMPOSITE PIPE SOUTH, L.L.C.**
**d/b/a THOMPSON PIPE GROUP – FLOWTITE**          **DEFENDANT**

**SERVE:**
Cogency Global, Inc.
Registered Agent
828 Lane Allen Road, Ste. 219
Lexington, Kentucky 40504

**JURY TRIAL DEMANDED**

\*\*\* \*\*\* \*\*\*

Comes the Plaintiff, Andrew Boer (hereinafter referred to as "Mr. Boer"), and for his Complaint against Defendant, U.S. Composite Pipe South, L.L.C. d/b/a Thompson Pipe Group – Flowtite (hereinafter referred to as "TPG – Flowtite"), states as follows:

**PARTIES**

1. Plaintiff, Andrew Boer, is and has been during all times relevant to this complaint, a citizen of the Commonwealth of Kentucky, residing in Crestwood, Kentucky. Mr. Boer was continuously employed by Defendant from April 4, 2014, until his illegal termination on September 4, 2018.

2. TPG – Flowtite is a Corporation organized under the laws of Louisiana with its principal place of business at 18585 Samuels Road, Zachary, Louisiana 70791. TPG – Flowtite is registered to do business in the Commonwealth of Kentucky.

## JURISDICTION AND VENUE

3. Mr. Boer is a resident of Crestwood, Kentucky and a citizen of the Commonwealth of Kentucky.

4. This Court has personal jurisdiction because TPG – Flowtite conducts business and employed Mr. Boer in Kentucky.

5. Jurisdiction is proper in in the District Court for the Western District of Kentucky pursuant to 28 U.S.C. § 1332.

6. The events giving rise to the Plaintiff's claims occurred within this judicial district and division. Therefore, venue is proper under 28 U.S.C. §1391.

## FACTS

7. TPG - Flowtite manufactures and sells a product called "Flowtite," which is a Fiberglass Reinforced Pipe ("FRP"). FRP is most commonly used to transport water or sewer waste in industrial applications. TPG – Flowtite's product has been sold and installed around the country.

8. Mr. Boer was hired as a Regional Sales Member of TPG – Flowtite on April 4, 2014.

9. In 2016 TPG – Flowtite raised Mr. Boer's base pay from $94,000 to $115,000 in recognition of his performance at TPG – Flowtite.

10. In April of 2018 Mr. Boer took an "interim promotion" as an Eastern District Manager.

11. Mr. Boer was one of the top performing sales managers at TPG – Flowtite; he was one of only two sales managers with more than $10 million in sales between 2015 and 2018.

12. Mr. Boer also contributed to TPG – Flowtite's workflow and internal software programs, used daily by the TPG – Flowtite salesforce. For example, Mr. Boer created a "Bidtab" system, which stores and organizes post-bid data. Mr. Boer also developed a "confidence

level" system, which organized potential bids on a scale of 1 – 5 by level of confidence in securing a bid. Both the Bidtab and confidence level systems have become staples for TPG – Flowtite's Upper Management and Regional Sales Managers to gauge future sales and set sales goals.

13. TPG – Flowtite relied upon Mr. Boer's exceptional knowledge of FRP and the comprehensive waterworks industry. Regional Sales Managers conducted "Lunch and Learn Training," in which Regional Sales Managers trained certified engineers on TPG – Flowtite's products, as part of the engineers' continuing education. Mr. Boer was so skilled at these presentations that Mike Leathers ("Mr. Leathers"), formerly Executive Vice President of TPG – Flowtite, asked Mr. Boer to demonstrate his presentations to other TPG employees as an example of how TPG liked to see their products marketed.

14. Mr. Leathers also personally reached out to Mr. Boer, and encouraged Mr. Boer's colleagues to reach out to Mr. Boer, for technical advice on TPG – Flowtite's products.

15. In February of 2017 Mr. Leathers texted the following to Mr. Boer about TPG – Flowtite's domestic competitor in FRP, Hobas USA ("Hobas"):

> My suggestion to grow FRP in right way
>
> There shouldn't be a concern - find out and we can ask Hobas.
>
> We want to be a professional industry good competitor.
>
> Lead by example.
>
> We should reach out to them and express what concern is and have them either address or give blessing to price.
>
> Price for profit

16. Mr. Boer was astonished by this text message, in which Mr. Leathers was instructing Mr. Boer to contact Hobas, TPG – Flowtite's market competitor, to get this competitor's permission for TPG – Flowtite to compete against Hobas on a bid.

17. Mr. Boer knew that TPG – Flowtite offered a stronger product than Hobas. Hobas' pipe was more susceptible to buckling under the heat of hydration, which can raise the ambient temperature of the pipe to well over 120 degrees Fahrenheit.

18. Mr. Boer wished to offer TPG – Flowtite's superior product in a competitive bid, but was instead instructed to "reach out" to Hobas regarding a "blessing to price."

19. Mr. Boer immediately responded to Mr. Leathers' text message by refusing to follow Mr. Leathers' instruction:

> Hobas buckled in Stl on Jacobs project. Our max grouting pressure is twice of theirs. This "blessing" premise is not one I'm willing to answer for. That's illegal. What am I missing here?

20. Mr. Leathers responded that, if Mr. Boer ever accused Mr. Leathers of illegal activity again, it would be their "2nd to last communication:"

> It is not illegal - don't ever accuse me in future or it will be our 2nd to last communication!
>
> I will reach out as an industry concern around a similar product.
>
> We have also had bucking issues and we need to understand concern, environment etc
>
> I will take on

21. Mr. Boer replied by pointing out that Mr. Leather's instruction to contact Hobas for "blessing to price" is "the definition of anti-trust":

> Sir, I feel this is evidence that electronic dialogue is being misconstrued. The idea of contacting Hobas for "blessing to price" from my previous life is the definition of anti-trust. For my to voice concerns and my employment be threatened is concerning. These times are interesting and unique with the Hobas/Flowtite JV are one where I specifically require direction. Can you please help
>
> Delivered

22. Mr. Leathers responded that he would discuss this matter over the phone with Mr. Boer, but again threatened Mr. Boer's employment with TPG – Flowtite if he ever "falsely accuse[d] [him] of something like this again:"

> I'm happy to discuss over phone but so it's spelled out for you - This has nothing to do w any potential JV or that our products are going to handled by one company in Europe - blessing to price - simply means professional courtesy. We would not want Hobas coming in after the fact on a potential false claim by us either - I asked that you verify and then if we price we be a professional industry competitor
>
> You than came back w I was asking for something illegal.
>
> Letting you know if you falsely accuse me of something like this again - you we will not be working w me.
>
> You can always ask for clarification - don't accuse and jump to worst conclusion. Don't blame. Don't be a victim. Don't be a savior. Or again- you won't work for me. Working w me is a team effort of trust and like.
>
> If you can't - we can work on an exit plan and It will be professional

23. Mr. Boer was so disturbed by the foregoing February 2017 text exchanges with Mr. Leathers that, on the same day of these text conversations, Mr. Boer contacted Jeff LeBlanc ("Mr. LeBlanc"), TPG – Flowtite's Vice President of Sales at the time, and requested Mr. LeBlanc implement anti-trust training for TPG – Flowtite's sales managers.

24. To Mr. Boer's knowledge, the sales managers were never given any anti-trust training.

25. On July 13, 2018, Mr. Boer sent a Request for Information ("RFI") to the City of Orlando, Florida, concerning a public bid for a project called the Dean Road Slipline Project ("Dean Road").

26. In Mr. Boer's said request he stated that Hobas' product was being incorrectly portrayed in the bid as similar in quality to TPG – Flowtite's product, despite the fact that Hobas' pipe was neither as strong nor as corrosion-resistant as TPG – Flowtite's product. Mr. Boer pointed out that the two products, though differing in quality, were being bid at similar prices.

27. When, Mr. Leathers discovered that Mr. Boer had sent the RFI, which the City of Orlando published via an addendum on July 18, 2017, Mr. Leathers became irate. Mr. Leathers told Mr. Boer "you should not have done that." Mr. Boer recognized this as yet another threat to his employment.

28. A few weeks later Mr. Leathers told Mr. Boer that TPG – Flowtite was "backing off" the Orlando bid and was going to win a different project bid in Tennessee pursuant to a "gentlemen's agreement" between Mr. Leathers and Martin Dana, the Vice President of Sales at Hobas.

29. Also in July of 2018, Mr. LeBlanc emailed a PowerPoint presentation to Mr. Leathers, Mr. Boer, and Tom Jankowski with a "goal" to establish relationships with Mr. Dana of Hobas and Eric Stokes of Northwest Pipe Company, another TPG – Flowtite industry competitor.

30. Throughout his time at TPG – Flowtite, Mr. Boer witnessed Mr. Leathers and others refer to Hobas employees as "Little Birdies" and make statements to the effect that they had talked to a "Little Birdie" about an upcoming bid. Mr. Boer did not participate in such discussions with Hobas employees.

31. On September 4, 2018, Mr. Boer participated in a National Sales Leader call. During the call, Mr. Boer voiced his concerns to Mr. Leathers regarding Mr. Leathers' request that Mr. Boer's subordinate, Steve Smith, contact Vianini Pipe Company, another market competitor of TPG – Flowtite.

32. Mr. Leathers immediately responded during this call by telling Mr. Boer that they "needed to have a one-one-one [meeting] today."

33. Mr. Boer never had this one-on-one meeting with Mr. Leathers. Instead, on that evening of September 4, 2018, Mr. Boer received a call from William May ("Mr. May"), TPG – Flowtite's Human Resources Director, and Detlev Schlorke ("Mr. Schlorke"), General Manager of TPG – Flowtite.

34. Mr. May and Mr. Schlorke informed Mr. Boer that he was terminated, effective immediately.

35. The only reason for termination that TPG – Flowtite provided to Mr. Boer when it terminated him was a supposed "lack of trust," because his wife had recently traveled to Maryland with him while Mr. Boer attended a trade show. This practice of a spouse accompany an employee to a trade show was one that had never been opposed by TPG – Flowtite and for which Mr. Boer had previously been given express permission.

## FIRST CAUSE OF ACTION
## La. R.S. § 23:967 RETALIATION

36. Plaintiff restates and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth again herein.

37. Mr. Boer's employment agreement with TPG – Flowtite (hereinafter referred to as "Agreement") provides that their Agreement is to be construed in accordance with Louisiana law.

38. La. R.S. § 51:122(A) prohibits "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in this state."

39. TPG – Flowtite was engaging in anti-trust practices in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, and Louisiana's state anti-trust act, La. Rev. Stat. § 51:121 *et seq*.

40. Mr. Boer, in good faith, repeatedly advised TPG – Flowtite of its illegal anti-trust practices.

41. Mr. Boer opposed, and refused to participate in, the illegal anti-trust practices described in the foregoing Paragraphs of this Complaint.

42. Mr. Boer was retaliated against by TPG – Flowtite for his good faith opposition to TPG – Flowtite's illegal actions, including being terminated by it.

## PRAYER FOR RELIEF

43. Plaintiff restates and incorporates each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

44. WHEREFORE, Plaintiff, Andrew Boer, prays that this Court:

    a. Declare Defendant's conduct in violations of Plaintiff's rights;

    b. Award Plaintiff compensatory damages, including, but not limited to, back pay, in such amounts to be proved at trial for his economic and other losses;

    c. Award Plaintiff punitive damages;

    d. Award Plaintiff pre-judgment and post-judgment interest;

    e. Award Plaintiff his reasonable attorneys' fees and costs;

    f. Grant Plaintiff such further relief as this Court may deem just and proper.

## JURY DEMAND

45. Plaintiff, Andrew Boer, demands a jury to try all issues triable by jury.

Respectfully Submitted,


s/John S. Friend
John S. Friend
Robert W. "Joe" Bishop
Anna C. Beilman
Robyn Smith
**BISHOP FRIEND SMITH & BEILMAN, P.S.C.**
6520 Glenridge Park Place, Suite 6
Louisville, KY 40222
(502) 425-2600
Firm@bishoplegal.net
COUNSEL FOR PLAINTIFF